UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| MARTHA S. MUHAMMAD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No.: 2:16-cv-01206-SGC |
| WENDY RICE, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the undersigned are the parties' briefs on the issue of subject matter jurisdiction. (Docs. 35, 36). For the reasons discussed below, this district court lacks subject matter jurisdiction over the plaintiff's claims. Accordingly, this action is due to be dismissed without prejudice.

**I. Procedural History**

Martha S. Muhammad commenced this action individually and as the administrator of the Estate of Ayatollah Khomeini Muhammad. (Doc. 1). In those capacities, she asserts claims for wrongful death, negligent supervision, and loss of consortium against the defendants, C.R., a minor, and Wendy and Brian Rice, individually and as next friend of C.R. (*Id.*). Federal subject matter jurisdiction is premised on diversity of citizenship. (*Id.* at ¶ 2). To that end, the complaint alleges Martha S. Muhammad (the "plaintiff") is a citizen of Georgia (*id.* at ¶ 4), Ayatollah Khomeini Muhammad (the "decedent") was a citizen of Georgia (*id.* at ¶

1

5), the defendants are citizens of Alabama (*id.* at ¶¶ 6-8), and the amount in controversy exceeds $75,000 (*id.* at ¶ 2). In their answer, the defendants deny the existence of diversity jurisdiction on the ground the decedent was not of diverse citizenship from the defendants. (Doc. 6 at ¶ 2, ¶ 5, p. 4). Consistent with the obligation of a district court to ensure its subject matter jurisdiction at all times, by an order dated September 11, 2018, the undersigned directed the Clerk to terminate the parties' pending motions for summary judgment addressing the merits of the plaintiff's claims and directed the parties to brief the issue of subject matter jurisdiction. (Doc. 34). The defendants submitted their brief on September 24, 2018 (Doc. 35),[1] and the plaintiff submitted her brief on September 25, 2018 (Doc. 36).

**II. Facts**[2]

The decedent is the plaintiff's son. (Doc. 36-1 at 5-7). He was shot and killed in Blount County, Alabama on July 23, 2014. (*Id.*). Details for a criminal harassment case to which he pleaded guilty in the District Court of Jefferson County, Alabama in December 2004 identify 2600 Sweeney Hollow Road or 428 Plaza Drive, both in Birmingham, Alabama, as his address at that time and reflect

---

[1] The defendants' brief was docketed as a motion to dismiss for lack of jurisdiction. (Doc. 35). The Clerk is **DIRECTED** to **TERM** the motion.

[2] The undersigned considers the evidence presented by the parties in the form of affidavits and other documents. Unsworn statements contained in briefs are not evidence of citizenship for purposes of establishing diversity. *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013)

2

he held an Alabama driver's license. (Doc. 35-5 at 2). Case details for a traffic violation to which he pleaded guilty in the Sumiton, Alabama Municipal Court in August 2012 identify 9600 Bradford Trafford Road in Warrior, Alabama as his address at that time and record he held an Alabama driver's license. (Doc. 35-4 at 2). A marriage certificate issued to the decedent and Wendy Rice by the Probate Court of Jefferson County, Alabama in April 2013 identifies Birmingham, Alabama as the decedent's residence. (Doc. 35-3 at 2). Wendy Rice attests that through December 2013, she and the decedent resided at a rental property in Oneonta, Blount County, Alabama. (Doc 35-1 at 3). A traffic citation issued to the decedent in Alabama by the Jefferson County Sheriff's Office on June 26, 2014, identifies 2345 7th Place N.W., Apt. K in Birmingham, AL as his address[3] and records he held an Alabama driver's license. (Doc. 35-2 at 2). Wendy Rice attests that for 7-10 days immediately preceding his death, the decedent resided with Brandon Shofner in Pinson, Alabama and it was her understanding the decedent intended to remain there. (Doc. 35-1 at 3). She also attests that prior to his death, the decedent had regularly worked for All My Sons Moving Company in Homewood, Alabama; Eastern Tree Service in Pinson, Alabama; and Bass Pro Shops in Irondale, Alabama. (*Id.* at 2).

---

[3] Wendy Rice attests this address was "our apartment residence." (Doc. 35-1 at 3).

The plaintiff, by contrast, attests the decedent resided with her at 2773 Snapfinger Manor in Decatur, Georgia at the time of his death, had not resided at the Alabama address listed on his driver's license for at least a year at the time of his death,[4] had refused Wendy Rice's attempts to convince him to return to Alabama in June 2014, and had traveled to Blount County, Alabama at the time of his death for a car show. (Doc. 36-1 at 2-3). In further support of her allegation the decedent was a Georgia citizen at the time of his death, the plaintiff submits the following evidence: (1) the decedent's death certificate listing 2773 Snapfinger Manor, Decatur, Georgia as his residence (*id.* at 5-7; Doc. 36-4 at 2-4);[5] (2) letters of administration issued by the Probate Court of DeKalb County, Georgia, indicating the decedent's domicile in DeKalb County, Georgia as the basis of the probate court's jurisdiction (Doc. 36-1 at 9);[6] (3) a bill for medical treatment the decedent received in Atlanta, Georgia on July 9, 2014,[7] identifying his address as 2773 Snapfinger Manor, Decatur, Georgia (*id.* at 12); (4) photos of medication the plaintiff attests was prescribed for the decedent in connection with the foregoing

---

[4] Wendy Rice attests 2345 7th Place N.W., Apt. K, Birmingham, Alabama is the address that appeared on the decedent's driver's license. (Doc. 35-1 at 3).

[5] The plaintiff attests Wendy Rice provided the information for the decedent's death certificate. (Doc. 36-1 at 3).

[6] A decedent's residence at the time of death in the county where application for administration of his estate is made is one basis for a Georgia probate court's exercise of jurisdiction. O.C.G.A. § 15-9-31. For purposes of this Georgia statute, residence is equivalent to domicile. *Wright v. Goss*, 494 S.E. 2d 23, 26 (Ga. Ct. App. 1997).

[7] The plaintiff attests the decedent received medical treatment for a hand injury sustained while working on his car. (Doc. 36-1 at 3).

treatment and that she further attests the decedent filled in DeKalb County, Georgia (*id.* at 3, 13-15);[8] (5) the affidavit testimony of Alice Goodman that the decedent resided at 2773 Snapfinger Manor in Decatur, Georgia with his mother and was Goodman's neighbor in July 2014 (Doc. 36-2 at 2); (6) Brandon Shofner's statement to the Blount County Sheriff's Office that on the day of his death the decedent told Shofner there was "nothing here for him," "he was going back to Atl. w/ his mother, " and "he was going to go see [someone] about a job for money to get home" (Doc. 36-5 at 2); and (7) a business card for the decedent's personal training services printed with the 2773 Snapfinger Manor, Decatur, Georgia address and a phone number with a Georgia area code (Doc. 36-6 at 2).

**III. Discussion**

Subject matter jurisdiction premised on 28 U.S.C. § 1332 requires every plaintiff to be of diverse citizenship from every defendant. *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998). Where an estate is a party, it is the citizenship of the decedent at the time of his or her death that is relevant for purposes of determining diversity. 28 U.S.C. § 1332(c)(2); *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1327 (11th Cir. 2010).[9] A natural person is a citizen

---

[8] The photos are too dark and blurry for the undersigned to make out an address printed on the medication. (*See* Doc. 36-1 at 13-15).

[9] The citizenship of the estate's legal representative is relevant to the extent the representative asserts claims in his or her personal capacity. *Leyva v. Daniels*, 530 F. App'x 933, 934 (11th Cir. 2013) (citing *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1562 n.1 (11th Cir. 1994)).

of the state where he is domiciled, and domicile requires residence in a state and an intention to remain there indefinitely. *Travaglio*, 735 F.3d at 1269; *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) ("A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . ." (internal quotation marks omitted)).[10]

Determination of a person's domicile requires consideration of a variety of objective facts, including:

> where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, where bank accounts are maintained, where places of business or employment are located, and where memberships in local professional, civil, religious or social organizations are established.

*Slate v. Shell Oil Co.*, 444 F. Supp. 2d 1210, 1215 (S.D. Ala. 2006). No one fact is given controlling weight, but rather, courts look to the totality of the circumstances. *Id.* Determination of a person's domicile also requires consideration of subjective statements of intent. *Id.* However, such statements are not dispositive, *id.*, and in fact, the Eleventh Circuit has noted, "[c]ourts generally

---

The defendants do not dispute the plaintiff, who asserts a claim for loss of consortium in her personal capacity, is a citizen of Georgia.

[10] The Eleventh Circuit has emphasized "[c]itizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994); *see also Keshock v. Metabowerke GMBH*, 2015 WL 4458858, at *2 (S.D. Ala. July 21, 2015) (collecting Eleventh Circuit cases).

6

give little weight to a party's profession of domicile . . . because these declarations are often self-serving." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342 (11th Cir. 2011); *see also Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir. 1972) ("In determining one's 'citizenship' or 'domicile' statements of intent are entitled to little weight when in conflict with facts.").

Finally, courts consider certain presumptions to aid their determination of a person's domicile. *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003) (noting usefulness of certain presumptions regarding domicile). There is a presumption a person's current residence is his or her domicile. *Id.*; *see also Molinos*, 633 F.3d at 1342 (noting it could be presumed party was domiciled at current residence until controverted by fact). However, because domicile has a mental or subjective element, it " 'is not necessarily synonymous with "residence," and one can reside in one place but be domiciled in another.' " *McNeal v. Workmaster*, 2009 WL 4508545, at *2 (M.D. Ala. Nov. 30, 2009) (quoting *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)); *see also Molinos*, 633 F.3d at 1341-42 ("Domicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence. Although physically present in the current residence, the person does not intend to remain in that state indefinitely.").

There is also a century-old presumption that once a person establishes a domicile in one state, that remains his domicile until he satisfies the physical and mental requirements of domicile in another. *See Mitchell v. United States*, 88 U.S. 350, 353 (1874) ("A domicile once acquired is presumed to continue until it is shown to have been changed."); *Audi*, 273 F. Supp. 2d at 1226 (noting requirements to overcome presumption). "The reason for this presumption is to solve the problem of locating an individual who has clearly abandoned his present domicile but either has not arrived at a new one or has arrived without formulating the intent to stay." *White v. All Am. Cable & Radio, Inc.*, 642 F. Supp. 69, 72 (D.P.R. 1986) (citing 13E Fed. Prac. & Proc. Juris. § 3612 (3d ed.)); *see also Jones v. Law Firm of Hill and Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001) (noting courts refer to presumption of continuing domicile because changes in residence are so common in this country). The party invoking federal jurisdiction bears the burden of proving facts supporting its existence by a preponderance of the evidence, *McCormick*, 293 F.3d at 1257, and the presumption of continuing domicile imposes "a heavier burden on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one," *Audi*, 273 F. Supp. 2d at 1226.

Here, the evidence establishes the decedent was domiciled in Alabama in the years preceding his death. In December 2004, the decedent held an Alabama

driver's license and maintained one or more addresses in Birmingham, Alabama. (Doc. 35-5 at 2). In August 2012, he held an Alabama driver's license and maintained an address in Warrior, Alabama. (Doc. 35-4 at 2). In April 2013, he and Wendy Rice obtained a marriage license from the Jefferson County, Alabama Probate Court, and in doing so, the decedent identified his residence as Birmingham, Alabama. (Doc. 35-3 at 2). Wendy Rice testified she and the decedent resided in a rental property in Oneonta, Alabama through December 2013 and that the decedent had regularly worked for businesses located in Alabama. (Doc. 35-1 at 3). The plaintiff has produced no evidence to contradict that the decedent was domiciled in Alabama during this time. Therefore, the question is whether the plaintiff has produced evidence sufficient to overcome the presumption of continuing domicile and show by a preponderance of the evidence the decedent had acquired a new domicile at the time of his death. *See Slate*, 444 F. Supp. 2d at 1215-16 (noting a person can have only one domicile at a time).

As an initial matter, the letters of administration issued by the DeKalb County Probate Court identifying the decedent's domicile in DeKalb County, Georgia as the basis for the probate court's jurisdiction (Doc. 36-1 at 9) are not conclusive proof of the decedent's domicile for purposes of establishing federal subject matter jurisdiction on the basis of diversity of citizenship. *See* 13E Fed. Prac. & Proc. Juris. § 3612 ("Although a wide variety of documents can be entered

as evidence of a person's domicile, they are always subject to judicial scrutiny and evaluation. Even formal declarations made for purposes other than the pending lawsuit . . . are not conclusive."). A state probate court's adjudication of domicile is not conclusive even for purposes of probate proceedings. *See Wilson v. Willard*, 358 S.E. 2d 859, 861 (Ga. Ct. App. 1987) (noting adjudication of domicile by probate court in one state does not preclude conflicting adjudication of domicile by probate court in another state); 121 A.L.R. 1200 (collecting "long line of cases" supporting this settled proposition). Given as much, evidence of the decedent's residence and domiciliary intent has greater weight on the determination of domicile in this action than the summary conclusion of domicile contained on the face of the letters of administration.

There is conflicting evidence as to where the decedent resided after December 2013 and in the months immediately preceding his death. However, even assuming the plaintiff has made a sufficient showing the decedent was residing in Georgia at the time of his death and had merely traveled to Alabama for a car show, she has failed to produce preponderating evidence the decedent had formed the requisite intent to make Georgia his home for an indefinite duration.

The bill for a single medical encounter the decedent had in Atlanta, Georgia after an accident (Doc. 36-1 at 12) and the related medication he filled in that state (*id.* at 3, 13-15) confirm the decedent's presence in Georgia in July 2014, but they

do not speak to his intent to remain there. Similarly, while the decedent's rejection of Wendy Rice's efforts to convince him to return to Alabama in June 2014 (*id.* at 3) and his statement to Brandon Shofner on the day of his death that there was "nothing [in Alabama] for him" (Doc. 36-5 at 2) could be viewed as evidence of an intent to abandon Alabama as his domicile, they are not persuasive evidence of an intent to make Georgia his fixed home.[11] *See White*, 642 F. Supp. at 72 (noting assumption of continuing domicile exists to solve problem of locating individual who has abandoned present domicile without yet acquiring new one).

Finally, although the decedent's business card for his personal training services (Doc. 36-6 at 2) shows the decedent had some notion of remaining in Georgia long enough that he would need to earn a living there, it lacks indicia of permanence that would make it more compelling evidence of domiciliary intent. The address listed on the card is the plaintiff's home address in Decatur, Georgia where the plaintiff claims the decedent was residing with her (*id.*); in other words, the decedent had not leased or purchased commercial space for his business. Moreover, the plaintiff has not shown the decedent opened a Georgia bank account

---

[11] Any evidentiary value of the decedent's statements to Shofner that "he was going back to Atl. w/ his mother," and "was going to go see [someone] about a job for money to get home" is undercut by the fact that upon leaving Shofner's residence, the decedent did neither of these things but, rather, went to the house where Wendy Rice was living in Blount County, Alabama. (Doc. 36-5 at 2-3). *See Molinos*, 633 F.3d at 1342 (noting courts generally give little weight to professions of domicile because such declarations are often self-serving); *Hendry*, 455 F.2d at 956 (noting statements of intent are entitled to little weight in determining domicile when in conflict with facts).

11

for his business, purchased equipment for his business, had a client who used his personal training services, or otherwise took any action to establish his business beyond printing a business card.

## IV. Conclusion

A federal court must zealously ensure the existence of subject matter jurisdiction. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). It is obligated to inquire into subject matter jurisdiction *sua sponte* whenever presented with the possibility it does not exist, *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999), and it must dismiss an action if it determines at any time that it lacks subject matter jurisdiction, FED. R. CIV. P. 12(h)(3). Here, the evidence submitted by the plaintiff falls short of overcoming the presumption of the decedent's continued Alabama domicile and showing by a preponderance that at the time of his death the decedent had established a physical presence in Georgia with an intent to remain there indefinitely. Accordingly, this action is due to be dismissed without prejudice for lack of subject matter jurisdiction. A separate final order will be entered.

**DONE** this 18th day of October, 2018.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE